PAUL PAVLOVIC,                          )
                                        )
          Plaintiff,                    )        No. 11 C 00830
                                        )
     v.                                 )
                                        )        Judge Edmond E. Chang
THE BOARD OF EDUCATION                  )
FOR THE CITY OF CHICAGO,                )
                                        )
          Defendant.                    )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paul Pavlovic brought this suit against his former employer, Defendant Board of Education for the City of Chicago, alleging that the Board discriminated against him on the basis of age, disability, and national origin in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.*, the Americans with Disabilities Act (ADA) , 42 U.S.C. §§ 12112 *et seq.*, and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*[1] Pavlovic also alleges that the Board retaliated against him for filing complaints with the Equal Employment Opportunity Commission (EEOC) in violation of Title VII, 42 U.S.C. § 2000e–3(a), and the ADEA, 29 U.S.C. § 623(d). Lastly, Pavlovic contends that the Board deprived him of property and liberty interests in violation of his procedural due process rights by not providing him adequate notice or opportunity to be heard during his termination proceedings. Defendant Board moves for summary judgment on all of Pavlovic's claims.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Pavlovic is now proceeding *pro se*, but he had counsel through discovery and until after the Board filed the opening brief for summary judgment, after which his counsel moved to withdraw. *See* R. 29.

R. 20. For the reasons stated below, the Board's motion for summary judgment is granted.

**I.**

In evaluating the summary judgment motion, the Court views the facts in the light most favorable to the non-movant, Pavlovic. Paul Pavlovic is a 69-year-old man who was first hired by the Board in 1999 to work as a substitute Engineer Custodian Grade II. R. 22, Def.'s Stmt. of Facts (DSOF) ¶ 1. Pavlovic is a member of the International Union of Operating Engineers, AFL-CIO, Local 143-143B, which is the sole and exclusive bargaining representative for union engineers. *Id.* ¶ 6. Pursuant to a collective bargaining agreement between the Board and the union, Pavlovic was permitted to submit bids to his union for higher pay grades. *Id.* ¶ 1. All assignments of union engineers are governed by the collective bargaining agreement. *Id.* ¶ 6.

In October 2006, Pavlovic—then a Grade IV Engineer at the Key School—submitted a bid for a Grade V Engineer position at Clinton Elementary School, and he was awarded the position in December 2006. DSOF ¶ 7. But Pavlovic changed his mind and wanted to withdraw his bid for the position at Clinton; he was not permitted, however, to do so under the terms of the collective bargaining agreement. *Id.* ¶¶ 9, 12. Thus, Pavlovic was officially assigned to the Grade V Engineer position at Clinton School as of December 18, 2006. *Id.* ¶ 12.

At about the same time that he was assigned to Clinton School, Pavlovic began experiencing symptoms of depression. R. 22-4, Def.'s Exh. 4 at 18:14-16, 20:3-11 (Pavlovic Dep.). On January 4, 2007, Pavlovic was diagnosed with major depression

and checked himself into the psychiatric ward at Illinois Masonic Hospital. DSOF ¶ 14; Pavlovic Dep. at 21:22-24. The following day, the hospital contacted Clinton School to warn them that Pavlovic had left the hospital against medical advice after telling the staff that he wanted to hurt Principal Teresa Moy and a Human Resources representative. DSOF ¶¶ 15, 16. Pavlovic has no memory of making these threats. Pavlovic Dep. at 22:6-9.

Following the threat to Principal Moy, the Board directed Pavlovic to undergo a fitness-for-duty medical examination in accordance with the Board's rules. DSOF ¶ 21. On January 26, 2007, Pavlovic was examined by independent physician Dr. Joan Viets at Mercy Works to determine whether he was fit to return to work. *Id.* ¶ 23. Dr. Viets described Pavlovic as "angry and hostile" toward job-related issues and recommended that he be evaluated by a psychiatrist before being allowed to return to work. R. 22-16, Def.'s Exh. 16.

Pursuant to Dr. Viets's recommendation, the Board notified Pavlovic by mail that he was to report to Dr. Edward Tuder for a psychiatric exam on February 1, 2007. DSOF ¶ 27. When he failed to show up for the appointment, the Board notified him of a second appointment on May 21, 2007. *Id.* Both letters indicated that failure to comply would be grounds for termination. R. 22-17, Def.'s Exh. 17; R. 22-18, Def.'s Exh. 18. Pavlovic failed to show up for either the February or May 2007 appointment. DSOF ¶ 28.

In the meantime, Pavlovic submitted a request for a medical leave of absence in January 2007. DSOF ¶ 32. The medical certification accompanying his request stated

that Pavlovic suffered from major depression, was presently unable to work at all, and might be able to return to work in four weeks. R. 39, Pl.'s Resp. Br.[2] Exh. 2. The Board notified Pavlovic that his request for leave had been approved from January 22, 2007 through January 22, 2008. DSOF ¶ 35.

Pavlovic claims that he attempted to return to work in February 2007 after receiving a clearance letter from his own physician, Dr. James Dumphy. R. 39, Pl.'s Resp. Br. Exh. 5. Because Dr. Dumphy was an internal medicine specialist rather than a psychiatrist, the Board found Pavlovic's medical clearance to be insufficient. DSOF ¶ 20. Pavlovic did eventually show up for an independent psychiatric evaluation with Dr. Tuder on August 25, 2007, at which time he was found fit to return to work. *Id.* ¶¶ 29, 30.

Although Pavlovic was approved for leave through January 22, 2008, the Board was only required to hold his position open for the first twelve weeks of FMLA leave under the Board's Family Medical Leave Act policy and the union's collective bargaining agreement. DSOF ¶ 36. When Pavlovic did not return to duty after January 22, 2008 (when his leave period expired), the Board declared him Absent Without Leave and gave him ten days to explain his absence. *Id.* ¶¶ 37, 38. After receiving an

---

[2]Although Pavlovic did not respond to the Defendant's Statement of Facts in the correct Local Rule 56.1 format, in light of his *pro se* status, the Court examined the factual assertions in his response brief and considered them where supported by citations to the discovery record. Thus, this opinion cites to Plaintiff's Response Brief rather than Plaintiff's Local Rule 56.1(b)(3) Response to Defendant's Statement of Facts.

explanation letter from Pavlovic's attorney, the Board reinstated Pavlovic on September 15, 2008. *Id.* ¶¶ 37-41.

The Board assigned Pavlovic to the North Side Roving crew as a Grade V Engineer upon his return. DSOF ¶ 41. Although he did not have a permanent post, Pavlovic continued to receive pay commensurate with his position as a Grade V Engineer. Pavlovic Dep. at 62:8-24. Pavlovic testified, however, that after being assigned to the roving crew, he was not paid vacation or sick days, in addition to 285.5 hours of work. *Id.* at 56:19. Pavlovic claims that this was not rectified until after he filed charges with the EEOC in March 2009. *Id.* at 57:13-17.

In August 2009, Pavlovic was assigned to Lawndale Community Academy as a substitute engineer, where he began experiencing a series of performance and disciplinary problems. DSOF ¶ 42. Pavlovic allegedly refused to paint the stairway in the school's east building after being instructed to do so by Principal Jeannine Wolf on several occasions. *Id.* ¶¶ 44, 45, 47. He also allegedly failed to respond to a fire alarm and claimed not to know how to reset the fire alarm when asked by the fire marshal. R. 22-33, Def.'s Exh. 33. Security Officer Ian McCurry at Lawndale expressed concern that Pavlovic was not knowledgeable about his responsibilities, and would hide when called upon to perform his duties. *Id.* Principal Wolf described Pavlovic as "incompetent" and requested a replacement engineer from Chief Engineer Anthony Batastini. R. 22-32, Def.'s Exh. 32.

Pavlovic's troubles culminated on September 28, 2009, when he was asked to meet with Principal Wolf and Assistant Engineer Sharell Lane in Wolf's office

regarding his assigned duties. DSOF ¶ 48. During this meeting, Wolf presented Pavlovic with directives outlining his job responsibilities. *Id.* ¶ 50. The Board claims (based on Wolf's account of the meeting) that Pavlovic then began angrily yelling in Serbo-Croation, took out a utility knife, and began raising and lowering the blade. *Id.* ¶ 51. Although Pavlovic initially put the knife away at Wolf's request, the Board claims that he later pulled out the knife again and gestured with it in a menacing manner. *Id.* ¶ 52. Wolf testified that she felt threatened by Pavlovic's behavior, called security, and requested that Pavlovic gather his personal belongings, turn in his school keys, and leave the building. *Id.* ¶ 56. Pavlovic was then escorted off the premises by security. *Id.* ¶ 60. Immediately following the incident, Wolf notified Chief Engineer Batastini and James Ciesil of the Board's Law Department of Pavlovic's behavior. R. 22-31, Def.'s Exh. 31.

Pavlovic admits to having a box-cutter with him during his meeting with Wolf, but claims that he only had the knife because he had been breaking down cardboard boxes right before being called into Wolf's office. Pavlovic Dep. 4 at 79:3-7. Pavlovic testified that the knife had a rusty blade and that he was having difficulty retracting the tip of the blade when he entered Wolf's office. R. 22-36, Def.'s Exh. 36 at CPS 00547. Pavlovic denies waving the box-cutter at Wolf in a threatening manner. Pavlovic Dep. at 78:13-16.

Following the September 28 box-cutter incident, the Board sent a letter to Pavlovic on October 8, 2009, notifying him of a pre-suspension hearing scheduled for October 13, 2009. DSOF ¶ 61. The letter was sent via certified mail, and was not

received by Pavlovic until after the hearing on October 17, 2009. R. 39, Pl.'s Resp. Br. Exh. 18-3. Although Pavlovic did not attend the hearing in person, he was represented by his union representative, Denis Lechowicz. DSOF ¶ 63. After the hearing, the Board notified Pavlovic that he would be suspended without pay as of October 26, 2009. *Id.* ¶ 64.

At the end of December 2009, the Board notified Pavlovic that it had filed dismissal charges against him. DSOF ¶ 65. The dismissal charges specified Pavlovic's repeated insubordination, deficient performance, and violation of Board rules and policies. *Id.* ¶ 66. Pavlovic attended his dismissal hearing on February 24, 2010. *Id.* ¶ 67. Although he was represented by his union representatives, Pavlovic claims that he was unable to testify at his dismissal hearing because the union president had instructed him not to speak. Pavlovic Dep. at 82:11-15. Based on the findings at the dismissal hearing, Chicago Public Schools CEO Ron Huberman recommended that Pavlovic be terminated, and suspended Pavlovic pending the Board's adoption of his recommendation. R. 22-43, Def.'s Exh. 43. The Board officially discharged Pavlovic on March 24, 2010. DSOF ¶ 70. Pavlovic filed this lawsuit, and the Board now moves for summary judgment.

## II.

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare v. UnitedHealth Group*, 629 F.3d 697, 704 (7th Cir. 2011) (citations omitted), and must consider only competent evidence of a type otherwise admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted). The party seeking summary judgment has the initial burden of showing there is no genuine dispute and they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (internal citations and quotations omitted).

### III.

Pavlovic alleges that the Board (1) discriminated against him because of his national origin, age, and disability; (2) retaliated against him for filing complaints with the EEOC; and (3) failed to follow constitutionally adequate procedures in discharging him in violation of his due process rights.

# A.

Pavlovic claims in Counts I, II, and IV that the Board discriminated against him on the basis of his national origin by requiring him to undergo a psychiatric evaluation; transferring him to the roving crew; and terminating his employment. R. 9, Pl.'s Third Am. Compl. at 6-10, 11-12. To survive a motion for summary judgment, Pavlovic must establish a discrimination claim under Title VII in one of two ways, by the direct method or the indirect method of proof. *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). Under the direct method, a plaintiff must offer either direct evidence that acknowledges discriminatory animus on the part of the employer or circumstantial evidence that shows discriminatory motive through a longer chain of inferences. *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). The latter is commonly known as the "convincing mosaic" method, in which the plaintiff constructs a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision-maker. *See Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 794 (7th Cir. 2005).

Here, Pavlovic has presented no direct evidence that the psychiatric evaluation requirement, his transfer to the roving crew, or his eventual termination were motivated by discriminatory animus.[3] Therefore, Pavlovic cannot make out a

---

[3]Pavlovic asserts in his sur-reply that Principal Wolf called him an "insulting name" during their September 28, 2009 meeting. R. 43, Pl.'s Sur-reply at 6. In describing this same encounter during his deposition, Pavlovic testified that Wolf called him a "strange name." Pavlovic Dep. at 75:19-22. Without more, saying that Wolf used an "insulting" or "strange" name does not provide sufficient detail to count as evidence of age, disability, or national origin animus. More foundation, perhaps not much more, is needed before that evidence could be deemed relevant and admissible on the question of discrimination. For example, even if Pavlovic could not remember the insult verbatim, testimony explaining the *nature* of the comment (*e.g.*, 'it had something to do with how old and tired I was') could have rendered the

discrimination claim under the direct method of proof, and must proceed under the indirect method.

Under the indirect method, Pavlovic must first establish a prima facie case of employment discrimination by showing that (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the Board treated a similarly-situated individual outside Pavlovic's protected class more favorably. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012). If Pavlovic establishes a prima facie case, the burden then shifts to the Board to identify a legitimate, nondiscriminatory reason for the personnel action in question. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). If the Board offers such a reason, then Pavlovic must show that the proffered reason is actually a pretext for illegal discrimination. *Id.*

Except for the protected class in question, age discrimination claims under the ADEA and disability discrimination claims under the ADA are analyzed in a similar manner as national origin discrimination claims brought under Title VII. *See Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010) (age); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 548 (7th Cir. 2008) (disability). Thus, for purposes of brevity, the Court will consolidate Pavlovic's three theories of discrimination and address whether he has offered enough evidence to make out a prima facie case under the framework outlined above.

---

remark admissible as direct evidence. As the record stands, Pavlovic cannot rely on the "insulting" or "strange" remark.

Regardless of which theory of discrimination he pursues, Pavlovic is unable to establish a prima facie case of discrimination because he has not shown that a similarly-situated individual outside of his protected class(es) was treated more favorably by the Board. A similarly-situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (internal citations omitted). In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). These are *not* straitjacket requirements demanding that the other employee be "in a situation identical to that of the plaintiff." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309-10 (7th Cir. 2012). There simply must be "'enough common features between the individuals to allow [for] a meaningful comparison.'" *Id.* at 310 (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

In his deposition, Pavlovic identified four Board employees who he argues were treated more favorably. But he has provided no *admissible* evidence to show that these comparators are similarly-situated.[4] For example, Pavlovic contends that Toni Lara,

---

[4]To defeat a motion for summary judgment, a party may rely only on admissible evidence. *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007).

a Grade II Engineer at Marshall Middle School, was younger than him but otherwise similarly-situated, and was permitted to return to the same position at the same school after taking a year of sick leave. Pavlovic Dep. at 84:9-85:6. Pavlovic testified that he learned of Lara's situation from a Grade V Engineer who told him, "This lady was before one year on sick leave and they took her back in the same—at the same school, same grade." *Id.* at 85:4-6. Because this evidence is inadmissible hearsay, *see* Fed. R. Evid. 802,[5] the Court cannot consider it for summary judgment purposes. *See Gunville*, 583 F.3d at 985 ("[A] court may consider only admissible evidence in assessing a motion for summary judgment."). Even if the information about Lara were true and based on admissible evidence, Pavlovic still cannot prove that Lara was "directly comparable . . . in all material respects." *Bio*, 424 F.3d at 597 (internal citations omitted). As a Grade II Engineer, Lara has neither the same job description nor comparable qualifications as Pavlovic, who was a Grade V engineer. Moreover, there is no evidence that Lara also was experiencing similar performance problems at work, or had allegedly threatened her superiors, or that even the same decision-makers were involved. Thus, Lara cannot be considered a similarly-situated employee for summary judgment purposes.

---

[5]Because Pavlovic is now proceeding *pro se*, the Court considered possible exceptions to the hearsay rule, but none seem to apply. For example, there is no record evidence suggesting that the statement could be considered a non-hearsay admission of a party-opponent (there is no reason to believe that the Grade V Engineer's statement was made within the scope of employment, in contrast to if a human-resources representative had made the statement).

Pavlovic's two other examples of similarly-situated employees suffer from similar deficiencies. Pavlovic claims that John McGrath, a now-retired Grade V Engineer at Marshall Middle School, was out on sick leave for eight months and allowed to return to the same position at the same school, with the same benefits. Pavlovic Dep. at 85:15-19. Just like the previous example, Pavlovic's knowledge of McGrath's leave of absence is based on inadmissible hearsay. *Id.* (Pavlovic testified that "[McGrath] told me he was once eight months on the sick leave and allowed to go back to the same school . . . ."). Pavlovic also asserts that Greg Cartarlier, a Grade V Engineer at Foreman High School, had ankle surgery and was out of work for approximately two months. *Id.* at 85:20-86:12. Pavlovic claims that he found out about Cartarlier's leave of absence when he worked at Foreman High School as a substitute engineer, but does not mention how he learned of Cartarlier's absence. But even if this information were based on personal knowledge, Pavlovic does not provide any evidence (aside from Cartarlier's position) that Cartarlier was similarly-situated. While Pavlovic asserts that Cartarlier was younger, white, and American-born, *id.* at 86:7-9, he does not show that Cartarlier also experienced performance problems or had allegedly threatened a superior at work, or that the same decision-makers were involved.

Finally, Pavlovic contends in his sur-reply that Assistant Engineer Sharell Lane at Lawndale School is a similarly-situated employee who was treated more favorably. R. 43, Pl.'s Sur-reply at 16. Specifically, Pavlovic alleges that Lane was a Grade II Engineer who "did not have any knoledge [sic] in engineer field." Pl.'s Sur-reply at 16; *see also* Pavlovic Dep. at 68:8-10. Pavlovic's comparison to Lane fails since Lane's

position as a Grade II Engineer is not directly comparable to Pavlovic's position as a Grade V Engineer.

Because Pavlovic does not offer admissible evidence to show that the four Board employees discussed above are "directly comparable . . . in all material respects," *Bio*, 424 F.3d at 597 (internal quotations omitted), Pavlovic's prima facie showing of discrimination must fail on the fourth element.

But even if Pavlovic could make out a prima facie claim of discrimination, summary judgment is appropriate because the Board has legitimate, non-discriminatory reasons for terminating Pavlovic, and there is no evidence of pretext. *Stockwell*, 597 F.3d at 901. In his letter notifying Pavlovic of his discharge hearing, Board CEO Ron Huberman listed ten reasons on which Huberman based the dismissal recommendation, including Pavlovic's failure to perform basic engineering duties at Lawndale School, his failure to paint the East building staircase at Lawndale as directed by Principal Wolf, his failure to respond to the fire alarm system at Lawndale, and his September 28, 2009 meeting with Principal Wolf in which he allegedly threatened her with a box-cutter. R. 22-41, Def.'s Exh. 41 at RP080-RP082. Based on these allegations and the evidence presented at the February 2010 discharge hearing, the Board approved CEO Huberman's dismissal recommendation in March 2010. R. 22-44, Def.'s Exh. 44. None of the reasons proffered for Pavlovic's termination relates to Pavlovic's age, disability, or national origin. Rather, the Board relies on evidence of Pavlovic's numerous performance-related issues as nondiscriminatory reasons for its termination decision.

Moreover, Pavlovic has presented no evidence that the Board's reasons for termination were pretextual. Pretext exists where the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination. *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). The controlling case law adopts the "honest-belief rule," which holds that pretext does not exist even if the employer's decision was ill-considered or unreasonable, so long as the decisionmaker *honestly* believed the nondiscriminatory reason given for the action. *Id.* (internal citations omitted); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).

Here, there is evidence that Principal Wolf reported Pavlovic's disciplinary infractions at Lawndale School to Chief Engineer Batastini and CEO Huberman. R. 22-32, Def.'s Exh. 32; R. 22-33, Def.'s Exh. 33. There is also evidence that Pavlovic's alleged encounter with Principal Wolf on September 28, 2009 was reported up to the Board. R. 22-31, Def.'s Exh. 31. Whether any of these disciplinary infractions *actually* occurred is irrelevant to the inquiry of whether the Board acted out of pretext. The only question is whether, based on the evidence presented, the Board honestly believed that there was good cause for termination. *Little*, 369 F.3d at 1012. The complaints received from Principal Wolf and others at Lawndale School show that the Board honestly believed that Pavlovic was having disciplinary problems that justified termination, and Pavlovic has introduced no evidence to contradict that honest belief. Accordingly, because Pavlovic has neither made a prima facie showing of discrimination nor demonstrated that the Board acted pretextually, summary judgment as to the discrimination claims brought under Title VII, the ADA, and the ADEA is granted.

15

**B.**

Pavlovic alleges in Counts III and V that the Board retaliated against him in violation of Title VII and the ADEA for filing discrimination complaints with the EEOC. R. 9, Pl.'s Third Am. Compl. at 10-11, 12-13. Title VII's anti-retaliation provision makes it "unlawful . . . for any employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The ADEA contains a similar prohibition against retaliation. 29 U.S.C. § 623(d). As with his employment discrimination claim, Pavlovic may establish retaliation under the ADEA and Title VII under either the direct or indirect method of proof. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (ADEA retaliation); *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010) (Title VII retaliation). To establish retaliation under the direct method, Pavlovic must present either direct or circumstantial evidence showing that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) the protected activity is causally related to the adverse employment action. *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 677 (7th Cir. 2011) (Title VII); *Everroad*, 604 F.3d at 781 (ADEA). Here, Pavlovic has presented no evidence of causation, thus foreclosing the direct method of proof.

The legal framework for analyzing indirect retaliation claims mirrors the indirect, burden-shifting approach of discrimination claims. Under the indirect method, Pavlovic must first establish a prima facie case of retaliation by showing that (1) he

engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations, *i.e.*, he was performing his job satisfactorily; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (Title VII); *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007) (ADEA). Once Pavlovic has established a prima facie case, the burden then shifts to the Board to articulate a non-discriminatory reason for discharging Pavlovic. *Tomanovich*, 457 F.3d at 663. If the Board meets its burden, Pavlovic must show that a genuine issue of material fact exists as to whether the Board's proffered reason was pretextual. *Id.*

Because the analysis for Pavlovic's retaliation and discrimination claims are the same, and because—for the reasons discussed above—Pavlovic has failed to demonstrate that there are similarly-situated employees who were treated more favorably (he offers no others than the four discussed above), Pavlovic cannot make a prima facie showing of retaliation under the ADEA or Title VII. Accordingly, the Board's motion for summary judgment on Pavlovic's retaliation claims is granted.

## C.

Lastly, Pavlovic asserts in Counts VI and VII that the Board violated his procedural due process rights by failing to follow constitutionally adequate procedures during his termination proceedings. R. 9, Pl.'s Third Am. Compl. at 13-15. A procedural due process claim requires two inquiries: first, whether the plaintiff was deprived of a protected interest, either liberty or property; and second, what process is due. *Pugel*

17

*v. Bd. of Trs. Of Univ. of Illinois*, 378 F.3d 659, 662 (7th Cir. 2004). Here, because the parties assume that Pavlovic had both a property and liberty interest, the Court will proceed on those assumptions.[6]

Turning to the second inquiry (what process is due?), the specific issue here is whether Pavlovic was afforded due process at his pre-suspension hearing in October 2009 and his dismissal hearing in February 2010. Due process requires that before the government may deprive an individual of a constitutionally-protected liberty or property interest, the government must conduct a hearing accompanied by notice and an opportunity to be heard. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). For a pre-termination hearing to comply with due process requirements, the employee must receive (1) oral or written notice of charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell his side of the story. *Bodenstab v. County of Cook*, 569 F.3d 651, 664 (7th Cir. 2009).

Pavlovic argues that he was not given proper notice or an opportunity to be heard at his pre-suspension hearing in October 2009. The Board sent a letter via certified mail on October 8 notifying Pavlovic of the October 13 hearing. R. 39, Pl.'s Resp. Br. Exh. 18-2. Pavlovic did not, however, receive the letter until October 17, after the hearing had already occurred. R. 39, Pl.'s Resp. Br. Exh. 18-3. That would be a problem if due process always demands *actual* notice. But the Constitution requires

---

[6]It is not always clear when government employment can constitute a protectible property or liberty interest, but as noted, the parties have assumed Pavlovic had such an interest.

18

only that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It does not require "heroic efforts by the [g]overnment" to serve notice, *Dusenberry v. United States*, 534 U.S. 161, 170 (2002), or that the government's effort to give notice always succeed, *Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009). Moreover, notice via certified mail is typically sufficient for due process purposes. *Krecioch v. United States*, 221 F. 3d 976, 980 (7th Cir. 2000). A certified mailing to an address known to be current will ordinarily discharge the government's duty of notice, even if it is not the best method. *Derezinski v. Mukasey*, 516 F.3d 619, 621 (7th Cir. 2008).

Here, Pavlovic acknowledges that he had been successfully receiving mail from the Board at his 5907 West Addison Street address, where the notice letter was mailed. Pavlovic Dep. at 45:2-15. Because the West Addison Street address was the address the Board had on file for Pavlovic, and because Pavlovic had been successfully receiving mail at that address, the Board reasonably believed that Pavlovic would receive the notice letter. Accordingly, the Court holds that Pavlovic was given constitutionally-adequate notice of his pre-suspension hearing.

Even if Pavlovic received faulty notice of the pre-suspension hearing, he was represented at the hearing by his union representative, William Iacullo, who did receive timely notice of the hearing. DSOF ¶ 63. In fact, Pavlovic was not officially suspended without pay until October 26, 2009, well after he learned of the suspension

hearing on October 17. R. 43, Pl.'s Sur-reply Exh. 19. That Pavlovic waited until November 25, 2009—almost one month later—to file a formal grievance about his suspension also suggests that Pavlovic waived his right to challenge the Board's pre-suspension notice procedures. R. 43, Pl.'s Sur-reply Exh. 21.

Pavlovic also contends that he was not given an opportunity to be heard at his February 2010 dismissal hearing. Although Pavlovic received proper notice of and was able to attend the hearing in person, DSOF ¶¶ 67, 68, he claims that he was unable to testify at the hearing because the union president instructed him not to speak. Pavlovic Dep. at 82:11-15. Although this might be true (and we assume it is for purposes of this summary judgment motion), Pavlovic has offered no evidence that the *Board* denied him an opportunity to be heard at the dismissal hearing. Indeed, the Board's notice letter on December 29, 2009 specifically states that at the hearing, "[Pavlovic] will be given the opportunity to respond to the charges and to present oral and written evidence on [his] behalf, including witnesses." R. 22-41, Def.'s Exh. 41. That Pavlovic elected to follow the advice of his *union* representative at the dismissal hearing does not make the Board liable for a due process violation.

Because Pavlovic has failed to demonstrate that the Board denied him notice and an opportunity to be heard regarding his pre-suspension and dismissal hearings, there is no genuine issue of material fact with respect to Pavlovic's due process claims, and the Board prevails on the due process claims. Accordingly, the Court grants the Board's motion for summary judgment on Pavlovic's due process claims.

## IV.

For the reasons stated above, the Board's motion for summary judgment [R. 20] is granted.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 21, 2012